UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMANDA N. ARAIZA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:21-cv-00295-CDB (SS)<br><br>**ORDER DENYING PLANITIFF'S MOTION FOR SUMMARY JUDGMENT, AFFIRMING THE COMMISSIONER AND CLOSING THIS CASE**<br><br>(Docs. 20, 21) |

　　　　Plaintiff Demanda N. Araiza ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security benefits pursuant to Title XVI of the Social Security Act. Defendant filed an opposition to Plaintiff's brief. (Doc. 21). The matter is currently before the Court on the Administrative Record (Doc. 12) and the parties' briefs, which were submitted without oral argument.[1]  For the reasons set forth below, the Court affirms the ALJ's decision.

///

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge and this action has been assigned to the undersigned for all purposes pursuant to 28 U.S.C. 636(c)(1). (Doc. 10).

# BACKGROUND[2]

This action arises from Plaintiff's unsuccessful application to the Social Security Administration for Social Security Disability Insurance ("SSDI") benefits, filed on November 30, 2016, alleging the onset of disability on August 1, 2016, due to a hip injury and sleep apnea. (Administrative Record "AR" 124).[3] Plaintiff's claim was originally denied on April 25, 2017. (AR 164). The Commissioner denied Plaintiff's claim again upon reconsideration on June 21, 2017. (AR 171). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which resulted in two hearings on March 29 and July 9, 2019. (AR 50, 99, 173).

The ALJ issued an unfavorable decision on October 8, 2019. (AR 18-49). At the first step of the sequential evaluation process under 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR 25). At step two, the ALJ found that Plaintiff has the following severe impairments: disorder of bilateral hips with pain greater on the right hip than the left, right knee osteoarthritis, disorder of the lumbar and thoracic spine, status-post fracture to the great toe, obesity, anxiety disorder, depression, and a learning disorder. (AR 25). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 26).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") as set forth below:

> After careful consideration of the entire record, I find that the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b). Specifically, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can push and pull within these weight limits. She can stand and/or walk for six hours in an eight-hour workday, but she should not do any prolonged walking greater than one-hour without the use of a cane. The claimant can rest or elevate her legs every two hours

---

[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized below. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

[3] At Plaintiff's request during the first hearing, her originally alleged disability onset date was amended from March 9, 2009, to August 1, 2016. (AR 22).

2

> for ten to fifteen minutes falling within the normal breaks and lunch period. She can sit without limits. She is precluded from climbing ladders and ropes or using scaffolds, crawling, kneeling, or crouching. She can occasionally use foot controls and occasionally perform all other postural including climbing stairs. The claimant is precluded from prolonged exposure to respiratory irritants such as fumes, dust, chemicals, paint, or poor ventilation. She is precluded prom prolonged exposure to extreme cold, vibration, or the use of vibrating tools. The claimant should not work in hazardous work environments such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles. She is capable of performing simple, routine and repetitive tasks. (AR 29-30).

The ALJ determined that Plaintiff cannot perform her past relevant work as a hospital cleaner and day worker. (AR 41-42).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her testimony concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 30-31).

The ALJ acknowledged Plaintiff's completion of an Adult Function Report in December 2016, in which Plaintiff reported pain, difficulty standing, and that she had side effects from her medication that limited her ability to work. (AR 30). Plaintiff stated that she had no problem dressing, bathing, caring for her hair, shaving, feeding herself, or using the toilet. (AR 321). Plaintiff also reported she prepared simple meals and took care of her children, but could not do household chores. Plaintiff also asserted that she could drive a car, shop, and handle her finances independently. (AR 323). Plaintiff reported she was prescribed a cane and a brace. (AR 326).

During the hearing, Plaintiff testified that she had pain in her lower back, tailbone, left knee, and bilateral feet. However, she admitted that her pain medications decreased the pain and did not cause side effects. Plaintiff further testified that rest and heat were effective in alleviating her pain. (AR 73, 118). Plaintiff testified that she was undergoing physical therapy but refused injections because she was afraid. (AR 74).

The ALJ acknowledged that between October 17, 2016, and December 27, 2016, Plaintiff received physical therapy from LAGS Spine and Sportscare. (AR 32) (citing, *inter alia*, 527-28, 531-34, 535-39). During her initial examination at LAGS on October 17, 2016, plaintiff reported

pain in the bilateral knees and right hip. (AR 32, 535). The ALJ found that Plaintiff's neurological examination, motor strength, sense in the bilateral lower extremities, reflexes, coordination, gait and station all were normal. (AR 32, 536-37). Plaintiff could walk on her heels and toes, had normal range of motion of the hips with some pain and bilateral tenderness. The ALJ noted that Plaintiff received the same findings on November 14, 2016, as well as December 12, 2016. (AR 32, 526-530). The ALJ found no mention that Plaintiff used a cane or a walker in those treatment records. The ALJ also found that her physical examination findings at LAGS were similar at all her treatment dates. (AR 34, 546-47, 554, 561, 568, 573, 577). The ALJ concluded that the findings from LAGS all were essentially normal except for pain with flexion of the bilateral hips, with right more than left and a limp on the right leg. (AR 32)

The ALJ further found that an x-ray of Plaintiff's left hip on April 26, 2016, as well as a magnetic resonance imaging (MRI) taken on October 26, 2016, were unremarkable. (AR 33, 684, 698). Likewise, Plaintiff's x-rays of her thoracic spine dated October 21, 2016, were also unremarkable, except for mild disc space narrowing. (AR 33, 685). The x-rays of Plaintiff's lumbar spine showed no acute fracture and were unremarkable but for facet hypertrophy in her lower lumbar spine. (AR 33, 686). Plaintiff had an MRI of her right hip on July 11, 2016, which displayed tendinosis, sprain and a minimal tear. (AR 33, 693)

The ALJ also examined Plaintiff's treatment notes and concluded they do not support that an assistive device was prescribed, used, or requested by Plaintiff, until August 21, 2018. (AR 34, 767). On that date, Plaintiff's treating doctor addressed with her the consequences of not being compliant with treatment following her missing orthopedic referrals and not showing up to her scheduled appointments. (AR 34, 769). Plaintiff was told that her treatment at Fresno Medical Center would be terminated if she kept missing appointments. (AR 34, 767-69).

Throughout 2019, Plaintiff continued to report bilateral hip and knee pain but noted that medication reduced her pain. (AR 34, 907, 911, 916). According to Plaintiff's treatment records from LAGS on June 12, 2019, she ambulated with a walker. (AR 34, 1032). A bilateral knee x-ray performed on July 2, 2019, revealed mild arthritic changes and knee joint effusions. (AR 34, 1085).

4

1    Dr. Lalaine Tiu treated Plaintiff between March 14, 2019, and July 3, 2019. (AR 34,
2    1063-1087). The ALJ found that Dr. Tiu's treatment notes were similar to Plaintiff's treatment
3    records from 2016 to 2018. (AR 34). The ALJ noted that the x-rays ordered by Dr. Tiu on June
4    17, 2019, were all essentially normal. (AR 34, 1076-1078).
5    On June 9, 2019, Plaintiff was examined by Dr. Roger Wagner, an orthopedic consultative
6    examiner. (AR 34, 1045). Plaintiff complained of asthma, right hip pain, low back pain, and knee
7    pain and reported using an inhaler every day and being limited in her ability to stand, walk, and
8    sit due to hip pain. *Id*. Plaintiff reported that she never had undergone injections or surgery for
9    her knee or back. *Id*. Despite her reported pain, Plaintiff stated she cooked, cleaned, drove her
10   own car, shopped, performed her own activities of daily living and did some walking for exercise.
11   (AR 34-35, 1046).
12   Dr. Wagner noted that Plaintiff had good dexterity and flexibility. (AR 35, 1046-48). He
13   reported that Plaintiff walked across the room without her walker, without limping and in a safe
14   and stable manner. *Id*. Dr. Wagner opined that Plaintiff did not need a four-wheeled walker. *Id*.
15   He described a normal range of motion, normal bulk of the muscles, sensory findings and tendon
16   reflexes. Dr. Wagner also considered knee x-rays from July 2, 2019, before reaching his
17   conclusions. The x-rays of the knees indicated bilateral right greater than left patellofemoral with
18   mild arthritic changes and knee joint effusion. (AR 35, 1085).[4]
19   During testimony of a vocational expert ("VE"), the ALJ asked whether the VE was
20   familiar with the Dictionary of Occupational Titles ("DOT"). (AR 34, 94-98). The VE replied
21   that he was familiar with the DOT and the ALJ directed that if the VE provided an opinion in
22   conflict with the DOT, he was required to advise her of the conflict and the basis of his opinion.
23   The VE agreed to follow that direction. *Id*.
24   The ALJ then presented to the VE a series of hypothetical individuals that shared
25   Plaintiff's vocational profile, including her age, education, and work experience. (AR 94-97).
26   The hypothetical persons also had limitations that matched the RFC adopted by the ALJ during

---

[4] The ALJ's decision also addressed Plaintiff's mental impairments (*see, e.g.,* AR 35-37); however, as Plaintiff's appeal here does not challenge the ALJ's findings with respect to mental impairments, the Court declines to summarize or address those findings.

the hearing. (AR 29-30).  The VE identified three light unskilled jobs that the hypothetical person with Plaintiff's limitations would be able to perform: Information Clerk, DOT 237.367-018, svp2, light, with 91,000 jobs in the national community; Office Helper, DOT 239.567-010, svp2, light, with 218,000 jobs in the national community; and Parking Attendant, DOT 915.473-010, svp2, light, with 77,000 jobs in the national economy.  The ALJ concluded that the VE's testimony was consistent with the information contained in the DOT.  (AR 43, 95).

At step five, the ALJ found that based on the testimony of the VE and considering Plaintiff's RFC, age, and education, jobs existed in significant numbers in the national economy that Plaintiff can perform.  (AR 42).

Plaintiff requested review of the ALJ's decision in a Notice of Appeals Council Action dated July 1, 2020, and the Appeals Council summarily denied review. (AR 6-10, 267-70).  The ALJ's decision became the final decision of the Commissioner, and on March 1, 2021, Plaintiff filed a complaint in this Court.

## LEGAL STANDARD

**A. The Disability Standard**

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a).  An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[5]  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled.  *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).  Specifically, the ALJ is required to determine:

(1) whether a claimant engaged in substantial gainful activity during the period of

---

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

6

>alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on a claimant at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. § 416.920(e); § 416.945(a)(2). *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."). The RFC is not a medical opinion. 20 C.F.R. § 404.1527(d)(2). Rather, it is a legal decision that is expressly reserved to the Commissioner. 20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

/ / /

**DISCUSSION**

Plaintiff advances two arguments for the Court's review: (1) Whether the ALJ committed a harmful error at step five for not resolving conflicts in the VE's testimony; and (2) Whether the ALJ properly evaluated and explained the weight she accorded to evidence from Plaintiff's pain management doctor.

### A. Whether the ALJ Committed Harmful Error at Step Five.

Plaintiff argues the ALJ erred when she directed the VE – and thereby, "put the onus" on him – to inform the ALJ whenever his testimony conflicted with the information provided in the DOT. (Doc. 20 at 10). Rather, according to Plaintiff, the ALJ was required to affirmatively ask the VE about any such conflicts as he provided testimony. In addition, Plaintiff argues there is an unresolved apparent conflict between the RFC determination that Plaintiff is only capable of performing "simple, routine and repetitive tasks" (AR 30) and the reasoning level of one of the jobs (information clerk) the VE identified in response to the ALJ's hypothetical questions concerning a person with abilities akin the Plaintiff's abilities. (AR 43). *See* Doc. 20 at 10-11 (citing *Michelle G. v. Berryhill*, 2019 WL 3322405, at *10 (S.D. Cal. 2019), and *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015)).

Plaintiff also claims that the VE's testimony included more information than is contained in the DOT. Specifically, while the ALJ limited Plaintiff to "not do any prolonged walking greater than one-hour without the use of a cane" (AR 29), Plaintiff notes that such limitation is not addressed in the DOT and that this type of conflict generates problems with an RFC for light exertional work. (Doc. 20 at 11) (citing, *inter alia*, *Conrad v. Saul*, 2019 WL 5294415, at *3 (C.D. Cal. 2019) (noting that a claimant's ability to meet the requirements of light work "may be eroded by his need to use a cane or other hand-held assistive device to walk.")). Plaintiff contends that the ALJ committed harmful error by not reconciling the VE's testimony and Plaintiff's use of a cane.

#### 1. Standard of Law

At step five of the sequential evaluation process, the Commissioner must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can

perform despite [her] identified limitations." *Zavalin*, 778 F.3d at 845 (citation and internal quotes omitted). The ALJ first assesses a claimant's RFC and then considers potential occupations that the claimant may be able to perform with reference to the DOT. *Id.*; *Valentine*, 574 F.3d at 689; 20 C.F.R. § 416.920(g).

Hypothetical questions posed to the VE must set out all the limitations and restrictions of the claimant, as supported by the medical record. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). If the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy that have "requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Garcia v. Comm'r of Soc. Sec.*, No. 1:22-cv-01479-SAB, 2023 WL 5917996, at *10 (E.D. Cal. Sept. 11, 2023) (citing 20 C.F.R. § 404.1566(b)); *Burkhart v. Bowen*, 856 1335, 1340 n.3 (9th Cir. 1988).

"The DOT lists maximum requirements of occupations generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p, *available at* 2000 WL 1898704 (Dec. 4, 2000). "The term 'occupation,' as used in the DOT, refers to the collective description of those jobs.  Each occupation represents numerous jobs." *Id*.

Because the DOT is not comprehensive, "[i]ntroduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a [VE] is appropriate, even though the job traits may vary from the way the job title is classified in the DOT." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  Indeed, a VE might be more knowledgeable about a particular job's requirements due to their experience in job placement or career counseling.  SSR 00-4p. Therefore, a VE may be able to offer more specific information about jobs or occupations than provided in the DOT. *Id*.  The ALJ permissibly may rely on VE testimony regarding "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." *Tackett*, 180 F.3d at 1101.

If there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ is required to reconcile the inconsistency.  The ALJ may accomplish this by providing a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. SSR 00-4p, at *4; *see also Johnson*, 60 F.3d at 1435 (holding

that if the ALJ relies on VE testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation"). "An example of a conflict between the DOT and a VE's testimony is when the DOT's description of a job includes activities a claimant is precluded from doing, and the VE nonetheless testifies that the claimant would be able to perform that job." *Martinez v. Colvin*, No. 1:14-cv-1070-SMS, 2015 WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) (citations omitted); *Zavalin*, 778 F.3d at 846 (noting an apparent conflict where "expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle"). The ALJ must inquire on the record during the disability hearing as to whether there is an inconsistency. SSR 00-4p, at *4; *Massachi v. Astrue*, 486 F.3d 1149 1153-54 (9th Cir. 2007). In addition, neither the DOT nor the VE's evidence "trumps" the other when there is a conflict. Instead, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT information. SSR 00-4p, at *2.

If the ALJ fails to resolve an apparent inconsistency, the Court is left with a "gap in the record that precludes [it] from determining whether the ALJ's decision is supported by substantial evidence." *Zavalin*, 778 F.3d at 846. However, such a deficiency may amount to harmless error if there is no conflict, or if the VE provides "sufficient support for her conclusion so as to justify any potential conflicts." *Massachi*, 486 F.3d at 1154 n.19.

### 2. There is an Apparent Conflict Between Plaintiff's RFC and the Information Clerk Occupation

Plaintiff argues there is an apparent conflict between her RFC, which limits her to "performing simple, routine and repetitive tasks," and the information clerk occupation which requires a reasoning level of four, or the ability to:

> Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form. Examples of rational systems are: bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation.

*Information Clerk*, DOT 237.367-018, *available at* 1991 WL 672187 (Jan. 1, 2016). *Zavalin*, 778

F.3d at 847 (holding that there is an apparent conflict between the RFC to perform, simple repetitive tasks, and the demands of level three reasoning); *Michelle G*, 2019 WL 3322405, at *10. The Commissioner concedes that the information clerk occupation had a more demanding reasoning level than Plaintiff's RFC. (Doc. 21 at p. 8) (citing AR 29, 43). However, the Commissioner argues that the error is harmless because the two other occupations identified by the VE and ALJ (office helper and parking attendant) both have a reasoning level that is consistent with Plaintiff's limitations. *Id.* (citing AR 43 and *Hernandez v. Berryhill*, 707 F. App'x 456, 458-59 (9th Cir. 2017) (finding that although two of three occupations had an unresolved reasoning level conflict, the error was harmless because the remaining occupation had a reasoning level that was consistent with the Plaintiff's RFC)). *See Phillips v. Kijakazi*, 2021 WL 5506341, at *2 (9th Cir. Nov. 24, 2021) (finding harmless error where the ALJ properly identified at least one job that was consistent with Plaintiff's RFC). Thus, the harmfulness of the ALJ's error is contingent on whether she properly identified at least one other occupation that exists in significant numbers in the national economy that Plaintiff can perform. Since the Commissioner concedes that there is an unresolved apparent conflict between Plaintiff's RFC and the information clerk occupation, the Court turns to whether the ALJ's reliance on the two other occupations identified by the VE was erroneous.

**3. There is no Apparent Conflict Between Plaintiff's Limitations and the Parking Attendant and Office Helper Occupations**

Plaintiff additionally contends the step five analysis was erroneous because the VE's testimony on which the ALJ relied addressed limitations not included in the DOT, namely, use of an assistive device, the need to rest or elevate legs, and the use of foot controls. (AR 94-95). Plaintiff relatedly argues that the ALJ erred when she did not inquire whether the VE's testimony conflicted with Plaintiff's RFC limitation to "not do any prolonged walking greater than one-hour without the use of a cane." (AR 29).

As set forth above, the VE "may be able to provide more specific information about jobs or occupations than the DOT." *Garcia*, 2023 WL 5917996, at *10 (citing *Johnson*, 60 F.3d at 1435). Furthermore, the VE's testimony can only be fairly characterized as a conflict with the

12

1  DOT when the alleged conflict is "obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808
2  (9th Cir. 2016). Tasks that are not "essential, integral, or expected parts of a job are less likely to
3  qualify as apparent conflicts that the ALJ must ask about." *Id*.; *Dewey v. Colvin*, 650 F. App'x
4  512, 514 (9th Cir. 2016) (finding no conflict where the DOT is silent on whether there is a
5  "sit/stand option" and where the ALJ properly consulted the VE who indicated that there were
6  jobs a claimant could perform even though the claimant needed a sit/stand option and use of a
7  cane to ambulate).

8  "The requirement for an ALJ to ask follow up questions is fact-dependent." *Gutierrez*, 844
9  F.3d at 808. Ordinarily, the ALJ should ask the VE to explain why there is no conflict between
10  the DOT and the applicant's RFC. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017).
11  "[T]he more obscure the job, the less likely common experience will dictate the result." *Id*.

12  In this case, Plaintiff can stand and/or walk for six-hours in an eight-hour workday but she
13  is limited to the use of a cane for any walking greater than one-hour. Plaintiff can rest or elevate
14  her legs every two hours for ten to fifteen minutes within the normal breaks and lunch period.
15  (AR 24-25). The Court finds that there is no obvious or apparent conflict between Plaintiff's
16  limitations in this regard and the occupations of office helper or parking attendant.

17  The office helper and parking attendant roles are both categorized as "light work." *See*,
18  *Office Helper*, DOT 239.567-10, *available at* 1991 WL 672232 (Jan. 1, 2016); *Parking Lot*
19  *Attendant*, DOT 915.473-010, *available at* 1991 WL 687865 (Jan. 1, 2016). Other courts within
20  the Circuit have found no apparent conflict between a claimant's use of a cane and her ability to
21  do light work. For example, in *Pineda v. Comm'r of Soc. Sec.*, a claimant was limited to the use
22  of custom braces and a cane for standing and walking. No. 1:22-cv-01287-SAB, 2023 WL
23  5334987, at *5 (E.D. Cal. Aug. 18, 2023). The court found no apparent conflict between the
24  claimant's limitation and the DOT's description for an office helper. *Id*. at *13 (citing *Office*
25  *Helper*, DOT 239.567-010). Likewise, in *Gunnels v. Comm'r of Soc. Sec.*, the court found no
26  apparent conflict between a claimant's stand/walk limitations for four hours in an eight-hour
27  workday, and his ability to work as a parking lot attendant. 2020 WL 525681, at *12-13 (D. Ariz.
28  Feb. 3, 2020).

13

In *Haines v. Berryhill*, the court affirmed an ALJ who found that a claimant restricted to using a cane for any prolonged walking greater than 15 minutes at a time, and no prolonged walking greater than 30 minutes at a time, could engage in "light work" as a parking lot attendant. 2019 WL 430498, *2-4 (C.D. Cal. Feb. 4, 2019). However, in *Haines*, the VE expressed reluctance in identifying typical light work jobs and cut the available parking lot attendant jobs in half because many lacked the option to sit and stand all day. *Id*. at *2.

Here, Plaintiff's limitations are far more accommodating than the claimant in *Haines*. According to her RFC, Plaintiff can stand and/or walk for six hours in an eight-hour workday and would only need a cane for situations where she must do prolonged walking for longer than an hour. (AR 29-30). It is uncertain whether Plaintiff's limitations neatly fit into the "common experience" of a parking lot attendant's requirements to patrol the area to prevent thefts from parked automobiles. *Parking-Attendant*, DOT 915.473-010; *Lamear*, 865 F.3d at 1205. Regardless, even if the ALJ erred by not inquiring whether Plaintiff's limitations would diminish the availability of parking lot attendant positions, there would be a sufficient number of jobs in the office helper occupation alone to render harmless any error associated with the ALJ's reliance on the occupations of information clerk and parking lot attendant.

In sum, notwithstanding the apparent conflict between Plaintiff's reasoning level and the information clerk position, the ALJ properly identified occupations that exist in the national economy at significant numbers. Although it would have been best practice to ask the VE about potential conflicts *after* the VE suggested the occupations in the hypothetical, the Court finds that any error was harmless given the existence of at least one other occupation not challenged by Plaintiff (office helper) and which this Court finds error free. *See Hernandez,* 707 F. App'x at 458-59 ("even if the ALJ erred by failing to resolve an apparent conflict between Hernandez's RFC and the vocational expert's testimony that Hernandez could perform two other jobs that require Level 3 reasoning, any such error was harmless" where there was no conflict with respect to the RFC and one other VE-identified occupation).

**B. The ALJ Properly Evaluated and Explained the Medical Evidence.**

Plaintiff separately argues that the ALJ erred in basing her decision in part on alleged

1  inconsistencies between Plaintiff's allegations and medical records without properly evaluating
2  and explaining her assessment of the medical evidence from Plaintiff's treatment at her long-term
3  pain management provider, LAGS. (Doc. 20 at p. 12) (AR 32-41). Plaintiff assets that records
4  from LAGS noted significant findings, including Plaintiff's use of a walker and observations and
5  assessments regarding Plaintiff's hip and knee functionality. Plaintiff argues the ALJ's neglect in
6  addressing these records casts doubt on the ALJ's "basis for discounting medical opinions and the
7  claimant's own statements" in contravention of "the ALJ's statutory and regulatory requirement
8  to consider *all* the evidence in her denial." (Doc. 20 at p. 13) (emphasis in original).

9        To the contrary, the ALJ's decision reflects that she comprehensively reviewed and
10  addressed the entire record, including the records from LAGS. (AR 32). For instance, the ALJ
11  noted that at LAGS, Plaintiff reported pain in the bilateral knees and right hip, her neurological
12  examination was normal, motor strength, sensory in her bilateral lower extremities, reflexes,
13  coordination, gait and extension were normal. (AR 32) (citing AR 535). It is apparent that the
14  ALJ did comprehensively examine Plaintiff's physical treatment records from LAGS because she
15  concluded that *all* of them were consistently and mostly normal. *Id*. (citing AR 536-537). There
16  are several passages in the medical treatment records at LAGS that corroborate the ALJs findings.
17  *See* (AR 524, 532 ,537 ,908, 913, 917, 921, 926-27, 933-34, 938-39, 943,449-950, 953-954, 960-
18  64, 975-76, 1002-1006).

19        Furthermore, Plaintiff's medical treatment records from LAGS were just one of several
20  other resources examined by the ALJ in her decision. The ALJ documented her review of
21  Plaintiff's medical records, including the LAGS records from the 2016 date of onset up to March
22  8, 2019. (AR 34) (citing AR. 907, 911, 916). The ALJ also examined Plaintiff's medical records
23  from Fresno Medical Center (AR 33), Dr. Tiu (AR 34), and Dr. Wagner (AR 34-35).

24        The ALJ is not required to discuss every piece of evidence. *Howard v. Barnhart*, 341 F.3d
25  1006, 1012 (9th Cir. 2003). The Court is mindful that substantial evidence is a deferential
26  standard where the ALJ's decision is upheld if supported by the record as a whole. *Thomas*, 278
27  F.3d at 954. The Court has reviewed the entire record, including Plaintiff's disputed citations,
28  and finds that the ALJ has met that burden.

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security (Doc. 20) is DENIED and the decision of the Commissioner of Social Security is AFFIRMED.

2. The Clerk of the Court is DIRECTED to enter judgment in favor of the Defendant Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

IT IS SO ORDERED.

Dated:   **September 28, 2023**                              _____
                                                                                          UNITED STATES MAGISTRATE JUDGE